IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| LINDA SONNENTAG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:14-CV-01674-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

Plaintiff Linda Sonnentag appeals the Commissioner's decision denying her application for disabled widow's benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Sonnentag filed applications for disabled widow's benefits under Title II and supplemental security income under Title XVI. Admin. R. 194-97, 198-203. Her Title II claim is based on the wage record of her deceased husband who died in June 2006. To prevail on her Title II claim, Sonnentag must establish that she became disabled on or before June 30, 2013. Admin. R. 13. 20 C.F.R. § 404.335(c)(1).

1 - OPINION AND ORDER

Sonnentag alleged she became disabled in November 2009 due to bone spurs in her feet, depression, post traumatic stress disorder, high blood pressure, back problems, fibromyalgia, and a history of a head injury with recurring headaches. Admin. R. 16-17, 230. The alleged onset date corresponds to the day Sonnentag received emergency room treatment, reportedly after she had been assaulted.

The ALJ applied the sequential disability determination process described in 20 C.F.R. §404.1520 and §416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Sonnentag's ability to work adversely affected by lumbar degenerative disc disease, plantar heel spurs, obesity, right finger tenosynovitis, major depressive disorder, and post traumatic stress disorder. Admin. R. 16. The ALJ determined that, despite these impairments, Sonnentag retained the residual functional capacity to perform a range of light, simple, repetitive work, provided she could change positions at her workstation from standing to sitting as needed, could avoid concentrated exposure to certain environmental conditions, and would not be required to have more than occasional superficial contact with the general public. Admin. R. 18.

The vocational expert testified that a person with Sonnentag's age, education, work experience and RFC, could perform light unskilled occupations such as cashier, housekeeper, and counter attendant, which represent millions of jobs in the national economy. Admin. R. 24, 71-72. Accordingly, the ALJ concluded that Sonnentag had failed to establish that she was disabled within the meaning of the Social Security Act. Admin. R. 25

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.   Claims of error

Sonnentag contends that the ALJ improperly discounted her credibility, rejected lay witness statements, and gave insufficient weight to the opinions of Drs. Bellum, Pellicer, and Billings, and to the psychological evaluation of Russell Anderson, a social worker. As a result, Sonnentag contends, the ALJ elicited testimony from the vocational expert with hypothetical questions that did not accurately reflect her functional limitations. She contends the vocational expert's testimony, therefore, did not support the ALJ's decision that she was not disabled within the meaning of the Act.

### II.   Credibility determination

Sonnentag alleged that her ability to work was limited by heel bone spurs, depression, post traumatic stress disorder, high blood pressure, back problems, fibromyalgia, and the ongoing effects of a past head injury, including headaches and vision problems. Admin. R. 16-17, 230. The ALJ accepted much of what Sonnentag claimed and found her residual functional capacity significantly restricted, as described above. Admin. R. 18. The ALJ found some of Sonnentag's subjective statements about the severity and limiting effects of her symptoms less than fully credible, however.

An adverse credibility determination must include specific findings supported by substantial evidence and the ALJ must provide a clear and convincing explanation. *Carmickle v. Comm'r of*

*Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater,* 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti*, 533 F.3d at 1039 (quoting *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)). The reviewing court may not second guess an ALJ's credibility determination, however, if it is supported by substantial evidence. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

An ALJ must consider all the evidence in the case record when assessing a claimant's credibility, including objective medical evidence, medical opinions, treatment history, daily activities, work history, third-party observations of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284. The ALJ's decision shows that she considered proper factors in assessing Sonnentag's credibility.

The ALJ discounted Sonnentag's allegations of ongoing limitations, such as headaches and visual problems, resulting from her past head injury. Admin. R. 16-17. In November 2009, Sonnentag went to the emergency room with a complex laceration to the head after an alleged assault. A CT scan of the head was negative for any acute intracranial process. Her wound was treated and she was released in satisfactory condition. Admin. R. 16, 301-302, 456. At her hospital follow up, Sonnentag had no visual symptoms. Admin. R. 330. In May 2010 Sonnentag reported she had no headache or visual symptoms and declined medication for headache control other than Imitrex as needed, for previously existing intermittent headaches. Admin. R. 16, 333, 392. In August 2010 Sonnentag again denied headaches. Admin. R. 390. In June 2011 Sonnentag said she had experienced headaches off and on since the injury in November 2009. Admin. R. 379. Then

in October 2011 she said she had experienced daily constant headaches since her head injury in 2009. Admin. R. 456. Such inconsistencies in a claimant's statements support an adverse inference as to her credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In addition, the ALJ identified indications of secondary gain that could explain the inconsistencies in Sonnentag's statements. Admin. R. 16. For example, Sonnentag appeared to increase reports of headache symptoms when threatened with losing crime victims compensation and to claim that her symptoms had resolved in order to return to school and obtain financial aid. Admin. R. 379, 383, 386, 390. In the absence of clinical or objective medical evidence to explain Sonnentag's headaches, the ALJ could reasonably question the veracity of her headache claims in light of this evidence suggesting that the claims might have been based on Sonnentag's need for financial support.

The ALJ discounted Sonnentag's testimony that, beginning when she was assaulted in November 2009, she had lost grip strength with her right hand making it difficult to hold anything and causing her to drop things all the time. Admin. R. 19, 64, 264. The ALJ considered proper factors for assessing credibility, including the objective medical evidence and treatment history. At her emergency room visit after the incident, diagnostic imaging showed a ligament injury with a chip fracture to Sonnentag's middle finger with soft tissue swelling. Admin. R. 301-302. Otherwise her right hand was unremarkable. Admin. R. 19, 324. After one week, Sonnentag had no deficits in her upper extremities, demonstrated equal bilateral motor strength, and denied numbness or tingling. Admin. R. 19, 288. After one month, Sonnentag had no abnormalities, except mild tenderness to palpation in the injured middle finger. Her primary care physician diagnosed tenosynovitis, an inflammation condition, and referred Sonnentag for hand therapy. Admin. R. 397. The hand

therapist instructed her in home exercises and the use of heat and ice to reduce swelling. Admin. R.

329. In May 2010, Sonnentag's finger symptoms had resolved. Admin. R. 333. Sonnentag did not

seek treatment of her right hand for six months, and when she did, she complained of occasional

numbness, not in the injured middle finger, but in the index finger. Admin. R. 20, 392. At her

physical examination in October 2011, Sonnentag had normal fine motor manipulation and full grip

strength, demonstrated that she could open a jar and manipulate small objects, and exhibited no

deficits that would suggest the limitations alleged in her disability claim. Admin. R. 20, 460.

The ALJ reasoned that, if Sonnentag had lost grip strength to the extent that it caused her to

drop things persistently as she claimed, the medical findings would include some suggestion of such

deficits. Admin. R. 20. Such a lack of medical evidence to support a claimant's assertions is a

proper factor in the credibility analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007);

*Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005). In addition, the ALJ noted that the treatment

history showed very little effort on the part of Sonnentag to alleviate hand symptoms. Admin. R.

20. Such an unexplained failure to seek treatment for an allegedly disabling condition supports an

adverse inference as to the severity of the alleged symptoms. *Bruton v. Massanari,* 268 F.3d 824,

828 (9th Cir. 2001); *Flaten v. Sec'y of Health & Human Serv.,* 44 F.3d 1453, 1464 (9th Cir. 1995).

Sonnentag received very conservative treatment in the form of instructions for home treatments to

reduce swelling. Such conservative treatment supports an adverse inference as to the credibility of

her claims of extreme limitations in the use of her hand. *Parra v. Astrue,* 481 F.3d 742, 750-51 (9th

Cir. 2007).

The ALJ discounted Sonnentag's allegations regarding the severity of her limitations due to

back pain, including difficulty lifting, walking, sitting, and exercising, as well as leg weakness and

the subjective feeling that her legs would give out on her. Admin. R. 19, 58-59, 62. The medical history shows that she did not seek treatment for back symptoms until June 2011, nearly two years after the alleged onset of disability. Sonnentag's failure to seek treatment for her allegedly disabling symptoms supports an adverse inference as to the credibility of her claims regarding the severity and duration of those symptoms. *Bruton*, 268 F.3d at 828. The ALJ also found Sonnentag's assertions regarding the severity of back pain unsupported by the relatively mild objective and clinical findings. For example, MRI studies showed only mild to moderate degenerative changes in the lumbar spine. Admin. R. 20, 464. Physical examinations revealed inconsistent findings. On occasions she demonstrated subjective tenderness to palpation in the lumbar region, somewhat limited range of motion in the spine, and a somewhat altered gait. Admin. R. 376, 459, 460. At an examination in December 2011, however, she demonstrated normal coordination, station, and gait, with full motor strength and muscle tone in all extremities and without atrophy that would be associated with inactivity. Admin. R. 20, 474, 486. The ALJ also noted that Sonnentag claimed she was able to sit no longer than 10 minutes before feeling pain, but was able to sit through her administrative hearing for over an hour without exhibiting evidence of discomfort or difficulty. Admin. R. 20, 63. The ALJ drew reasonable inferences from the evidence to support his conclusion that Sonnentag's subjective statements about the limiting effects of her back pain were not entirely credible and that she remained capable of performing a limited range of light work provided she were allowed to alternate sitting and standing consistent with the RFC assessment.

The ALJ discounted Sonnentag's subjective allegations regarding the limiting effects of her mental impairments. Sonnentag testified that she had difficulty with memory and would often have

episodes of anger in which she would lash out at others around her. Admin. R. 46, 64-65. The ALJ accepted that Sonnentag had mental impairments that limited her functioning to some degree, but discounted Sonnentag's allegations to the extent she claimed limitations in excess of those in the RFC assessment and to the extent she claimed the limitations left her unable to perform any kind of work.

Again, the ALJ considered proper factors for assessing credibility, including the medical findings. In April 2011, Dr. Bellum found that Sonnentag was depressed due to significant financial stressors and lack of housing. Dr. Bellum was unsure of any relationship between Sonnentag's situational depression and the posttraumatic event in 2009. Admin. R. 383. In October 2011, Dr. Billings said Sonnentag appeared to be depressed, had an average fund of general information, and could recall recent events. Her memory for past information appeared to be in the average range but she appeared to have poor memory for recent information. Admin. R. 454. Dr. Billings opined that Sonnentag would have problems if she were required to work with the public, but did not identify any other work-related limitations. Admin. R. 455. In December 2011, Dr. Morinova found Sonnentag had normal recent and remote memory, attention, and concentration. Admin. R. 474. The ALJ reasonably inferred from the totality of these findings that the evidence of Sonnentag's mental limitations did not suggest she would be unable to perform simple, repetitive work that did not involve more than occasional superficial contact with the general public. Admin. R. 18.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Sonnentag's subjective statements about the limiting effects of her impairments. The reasoning is clear and convincing and the

credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

III.    **Lay witness statements**

Sonnentag next argues that the ALJ erred in rejecting the lay witness statement of her daughter, Demetria Bullock. Ms. Bullock reported that Sonnentag could not stand or walk for longer than 10 minutes due to back pain. She said Sonnentag could not concentrate and suffered from foot spurs, headaches, depression, and memory problems. Admin. R. 23, 238-245. The ALJ believed that Ms. Bullock credibly described her personal observations, but gave little weight to her opinion about Sonnentag's functional limitations, which were largely subjective and not observable. Admin. R. 23.

An ALJ must take into account the statements of lay witnesses unless the ALJ expressly determines to disregard such evidence and gives reasons germane to each witness for doing so. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).. An ALJ need not clearly link the reasons to her determination that the lay witness testimony should be discounted, as long as she notes germane reasons somewhere in the decision and they are supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d at 512 ). If an ALJ provides sufficient reasons to discredit certain testimony, for example, she does not have to repeat those reasons to address similar testimony given by a different witness. *Molina v. Astrue*, 674 F.3d 1104, 1114-1115 (9th Cir. 2012). Further, when the statements of a lay witness are similar to the claimant's subjective complaints, then an ALJ's clear and convincing reasons for rejecting the claimant's testimony are considered to be germane to the lay witness. *Valentine*, 574 F.3d at 694. Here, the ALJ found that Ms. Bullock's statements mirrored Sonnentag's subjective statements about

the limiting effects of her impairments. Accordingly, the ALJ's reasons for discounting Sonnentag's credibility provide a sufficient basis to discount Ms. Bullock's similar lay witness statements.

## IV.   Medical opinions

Sonnentag contends the ALJ gave insufficient weight to the medical opinions of Drs. Bellum, Pellicer, and Billings, and to the psychological worksheet prepared by Russell Anderson, a licensed social worker.

### A.   Dr. Bellum

Venugopal Bellum, M.D., provided Sonnentag with primary care during the time relevant to her claim. In January 2009, before the alleged onset of disability, Sonnentag asked Dr. Bellum and his physician assistant for notes to excuse her extended absences from work for a cough and for chronic intermittent headaches. Admin. R. 403-406. Dr. Bellum's clinic provided the excuses so that Sonnentag would not be fired, but noted that her alleged illnesses did not appear to justify the absences.

Dr. Bellum then saw Sonnentag in follow up after the alleged assault in November 2009, for an injured finger, intermittent headaches, and hypertension. Admin. R. 330, 333, 394, 397. Dr. Bellum's findings were generally benign and he treated Sonnentag conservatively with medication and instructions in diet and exercise. In August 2010, Sonnentag saw Dr. Bellum after she was suspended from school for failing to complete school work. She told Dr. Bellum that her headache medications interfered with her school work, her headaches had resolved, and she wanted a note from him so she could be reinstated at school. Admin. R. 390. In April 2011, Sonnentag reportedly had failing grades in school again. She told Dr. Bellum she felt much better and wanted to continue in school and asked Dr. Bellum to write a letter to the school to support her. Dr. Bellum raised the

issue of secondary gain suggesting that Sonnentag did not want to lose her financial aid. Admin. R.

386. Three weeks later, after she was not promoted for another semester of school and lost her

financial aid, Sonnentag reversed course and told Dr. Bellum she had not improved and she wanted

to seek a disability claim. Admin. R. 383.

In July 2011, Dr. Bellum saw Sonnentag for ongoing hyptertension, headaches, and to fill

out paperwork for a Washington DSHS disability claim. Admin. R. 376. As part of the disability

paperwork, Dr. Bellum completed a worksheet regarding Sonnentag's functional capacities. Dr.

Bellum opined that Sonnentag could stand and sit for two hours each in an eight hour work day and

lift no more than 15 pounds occasionally and 10 pounds frequently. Dr. Bellum said Sonnentag had

no manipulative or environmental restrictions. Admin. R. 436-437. These limitations are more

restrictive than the RFC assessment regarding sitting and standing capacity, slightly more restrictive

regarding lifting, and less restrictive regarding manipulative and environmental limitations. Admin.

R. 18.

The ALJ gave Dr. Bellum's worksheet opinion no weight in the disability determination.

Admin. R. 22. An ALJ can reject the opinion of a treating physician in favor of the conflicting

opinion of another physician if the ALJ makes "findings setting forth specific, legitimate reasons for

doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947,

956-57 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). An

opinion that is not contradicted may be rejected for clear and convincing reasons. *Thomas*, 278 F.3d

at 956-57. Here, Dr. Bellum's opinion is inconsistent with the opinions of the state reviewing

medical consultants. Admin. R. 91-92, 477. In any event, the ALJ's reasoning for discounting Dr.

Bellum's opinion was sufficient under either standard.

The ALJ found Dr. Bellum's opinion insufficiently supported by clinical findings in his treatment notes. Admin. R. 43. As described previously, Dr. Bellum's treatment records reflect generally benign findings and very conservative treatment. In the examination at the time Dr. Bellum completed the worksheet, he found only slight limitations in spinal range of motion without focal, sensory, or motor strength deficits. Admin. R. 22, 375-376. The ALJ reasonably concluded that Dr. Bellum's findings did not support the incapacitating limitations on his worksheet. Admin. R. 22. An ALJ need not accept a medical opinion that is unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may properly discount a medical opinion that is conclusory, in checklist form, and unsupported by objective evidence or supporting rationale. *Batson*, 359 F.3d at 1195. Furthermore, in the absence of clinical findings to support the opinion, it is reasonable to infer that Dr. Bellum premised his opinion instead on Sonnentag's subjective report of her limitations, which the ALJ properly found lacking in credibility. Under such circumstances, the physician's opinion is no more reliable than the subjective claims upon which it is based. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 2001).

In addition, the ALJ found internal inconsistencies in Dr. Bellum's report. Although Dr. Bellum's only abnormal clinical findings were slight limitations in range of motion, he indicated no postural limitations, and instead suggested extreme limitations in Sonnentag's ability to stand and sit. Internal inconsistencies in a physician's opinion are relevant in determining the weight the opinion should be given. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

I find no merit in Sonnentag's argument that the ALJ had a duty to re-contact Dr. Bellum to develop the record more fully. An ALJ must develop the record more fully when the evidence is

ambiguous or when the ALJ finds the record inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d at 1150. Circumstances requiring further development were not present here.

### B.    Dr. Pellicer

In October 2011, Mary Pellicer, M.D., performed a consultative physical evaluation of Sonnentag, including a subjective history, review of records, a physical examination, and a mental status evaluation. Admin. R. 456-463. Dr. Pellicer noted that Sonnentag walked without a limp but appeared to be in pain and had some difficulty getting on and off the exam table. In her mental status evaluation, Dr. Pellicer said Sonnentag was pleasant and conversant but appeared to be anxious and tearful. Admin. R. 458. On physical examination, Dr. Pellicer obtained normal findings regarding Sonnentag's head, ears, eyes, nose, throat, neck, lungs, cardiovascular system, abdomen, and skin. Sonnentag's joints and extremities were normal except the right heel was tender to palpation over a bone spur and one finger joint had a contracture, but manipulative ability remained intact. Admin. R. 458-460. Sonnentag had normal ranges of motion, except for a minor decrease in back flexion and extension. She had good motor strength in all major muscle groups. Admin. R. 459.

Despite these generally unremarkable findings, Dr. Pellicer opined that Sonnentag was limited to lifting 5 pounds occasionally, standing and walking for less than 2 hours in an 8 hour work-day with frequent breaks, and sitting for 4 hours in an 8 hour work-day. She said Sonnentag could not bend or squat and could only occasionally engage in fine manipulation due to the contracture in one finger joint of the right hand. Dr. Pellicer also opined that Sonnentag would have severe limitations in a wide variety of settings due to underlying psychiatric problems. Admin. R. Admin. R. 21, 461.

The ALJ gave Dr. Pellicer's opinion no weight. Because Dr. Pellicer's opinion was contradicted by the findings and opinions of other physicians, the ALJ was required to provide specific, legitimate reasons for discounting her opinion. *Thomas v. Barnhart*, 278 F.3d at 956-57. First, the ALJ found Dr. Pellicer's opinion insufficiently supported by her contemporaneous examination findings. Admin. R. 21. I find it reasonable for the ALJ to conclude that Dr. Pellicer's examination findings of good motor strength, minor range of motion limitations in the back only, a contracture in one finger joint, and tenderness in one heel due to a bone spur did not suggest the incapacitating physical limitations in her opinion. An ALJ can reject a doctor's opinion that is brief, conclusory, and inadequately supported by clinical findings or rationale. *Bayliss*, 427 F.3d at 1216.

Dr. Pellicer's opinion that Sonnentag had wide ranging debilitating mental impairments, including memory loss, cognitive deficits, anxiety, mood swings, and uncontrolled anger, is utterly unsupported by her brief mental status evaluation, in which she found only that Sonnentag appeared depressed, anxious and tearful and that she was able to remember two of three words after five minutes. Admin. R. 21, 458, 461. As the ALJ correctly noted, none of Dr. Pellicer's findings on the mental status evaluation was inconsistent with the RFC assessment. Similarly, her findings did not support her own opinion.

In the absence of examination findings to support the opinion, the ALJ logically inferred that Dr. Pellicer likely relied heavily on Sonnentag's subjective report of her limitations in forming her opinion. An ALJ is entitled to reject a medical opinion that is premised primarily on subjective complaints the ALJ found unreliable.. *Tonapetyan*, 242 F.3d at 1149. Accordingly, I find no error in the ALJ's evaluation of Dr. Pellicer's opinion.

## C.    Dr. Billings

In October 2011, Emma Billings, Ph.D., performed a psychological assessment of Sonnentag, including a subjective history and mental status evaluation, but without a review of her records or administration of standardized testing. Admin. R. 450-455. Based on her interview, Dr. Billings opined that Sonnentag exhibited symptoms of depression and posttraumatic stress disorder, including problems with trust and vigilance, and "would be expected to have problems working with the public." Admin. R. 455. Dr. Billings also said Sonnentag had intermittent anger episodes that disrupt her functioning. Admin. R. 455.

The ALJ did not discredit Dr. Billings's opinion, stating that he accounted for it by limiting Sonnentag's RFC to work involving no more than occasional superficial contact with the public. Admin. R. 22. Thus, the ALJ interpreted Dr. Billings's opinion to mean that, if Sonnentag were not required to work with the public, but had occasional superficial interactions with members of the public, she would not have problems or disruptive episodes of anger. Despite Sonnentag's argument to the contrary, I find the ALJ's interpretation a rational way to account for Dr. Billings's findings in light of the record as a whole. Accordingly, the ALJ's factual finding must be upheld, even if the evidence could be interpreted in a manner more favorable to Sonnentag. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## D.    Mr. Anderson

In July 2011, Russell Anderson, L.I.C.S.W., completed a DHS mental evaluation worksheet based on an interview of Sonnentag without reviewing records or administering testing. Admin. R. 440-444. Mr. Russell said he observed symptoms of depression and anxiety. He diagnosed major depression, posttraumatic stress disorder, and pain disorder, with serious impairment of occupational

and social functioning, based on Sonnentag's subjective report that she could not "stand, sit, walk, or lay down for very long due to pain" and had difficulty completing activities of daily living. Admin. R. 441. He indicated Sonnentag had difficulties with concentration, focus, confusion, trust in others, short-term memory, irritability and pain. Admin. R. 443, 444. He opined she would be moderately limited in the ability to perform simple instructions, to learn new tasks, and to communicate in a setting with public contact. He said she would be markedly limited in the ability to work with complex instructions and to maintain appropriate behavior in a work setting. Admin. R. 443.

The ALJ gave Mr. Anderson's opinion no weight because he did not review Sonnentag's records, did not make clinical observations related to the limitations in his opinion, and did not administer objective testing. Instead, Mr. Anderson's opinion relied heavily on Sonnentag's subjective self reporting which the ALJ found lacking in credibility. Admin. R. 22.

Social workers are not "acceptable medical sources" under 20 C.F.R. § 404.1513(a), (d), and are treated as "other sources" under 20 C.F.R. § 404.1513(d)(3). *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). An ALJ may disregard the opinion of such a source by providing reasons germane to that source. *Turner*, 613 F.3d at 1224; *Lewis v. Apfel*, 236 F.3d at 511. The ALJ provided germane reasons for discounting Mr. Anderson's opinion and they are supported by substantial evidence. Accordingly, I find no error in the ALJ's evaluation of Mr. Anderson's opnion.

## V.    Vocational evidence

Sonnentag contends the ALJ erroneously elicited testimony from the VE with hypothetical assumptions that did not accurately reflect all of her functional limitations. The additional limitations Sonnentag claims are supported only by evidence the ALJ properly discounted, as

described previously in this opinion. Because the ALJ gave no weight to this evidence, the additional limitations Sonnentag claims are unsupported. An ALJ is not required to incorporate limitations she found unsupported by the evidence in the record. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Bayliss*, 427 F.3d at 1217; *Batson,* 359 F.3d at 1197-98; *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001). Accordingly, Sonnentag's challenge to the vocational evidence must be rejected as well.

## CONCLUSION

Based on the foregoing, Sonnentag's claims of error cannot be sustained. The Commissioner's decision is AFFIRMED.

DATED this 2\_\_day of January, 2016.

_____
Robert E. Jones, Senior Judge
United States District Court